### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL FOOTBALL LEAGUE ) PLAYERS ASSOCIATION, ) | Case: 1:08-mc-00653 |
|  ) | Assigned To : Urbina, Ricardo M. |
| Movant, ) | Assign. Date : 10/8/2008 |
|  ) | Description: Miscellaneous |
| vs. ) | **(D.MD., Case No. 08-cv-01870 WMN)** |
|  ) |  |
| PIO SAGAPOLUTELE, SEAN ) |  |
| LAMAR SMITH, AND BRUCE ) |  |
| SCHWAGER, ) |  |
|  ) |  |
| Respondents. ) |  |

## MOTION OF NON-PARTY NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION TO QUASH

**COMES NOW**, Movant, National Football League Players Association

("NFLPA") pursuant to Rule 45(c), Fed.R.Civ.P., and moves this Court to quash a

subpoena served by Plaintiffs in this case that is currently pending in the United States

District Court for the Northern District of Maryland, *Sagapolutele, et al. v. The Bert

Bell/Pete Rozelle NFL Player Ret. Plan, et al., C.A.No. 08-cv-01870 WMN.* The

subpoena *duces tecum* and the subpoena *ad testificandum*, which are returnable on

October 13, 2008, at 9:30 a.m., are attached hereto as Exhibit A.



**RECEIVED**

OCT - 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

The underlying action involves benefits claims brought by three individuals, Pio Sagapolutele, Sean Lamar Smith and Bruce Schwager, against two benefit Plans pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. The NFLPA is one of the settlors of the Taft-Hartley trusts that were created pursuant to collective bargaining agreements with the National Football League ("NFL") pursuant to which the Plans were created and are funded.

The subpoena *ad testificandum* calls for the NFLPA to present one or more Rule 30(b)(6) witnesses to testify about eighteen (18) types of information. **None of the categories of information relate to or involve any of the Plaintiffs**. Plaintiffs have also requested the NFLPA to produce seventeen (17) broadly worded categories of documents, and they have declined to narrow those requests. **None of the documents requested contain or refer to any of the Plaintiffs**.

As set forth in the Memorandum submitted herewith, the subpoena calls for information that is wholly irrelevant to the claims of the Plaintiffs. Under the law of the forum where the action is pending, discovery beyond the administrative record is not permissible in cases such as this. Under the law of the forum where the action is pending and the law in this judicial district, the discovery sought by Plaintiff is irrelevant overbroad, harassing, unduly burdensome and extraordinarily expensive to locate and produce. The NFLPA's objections to the subpoena are attached hereto as Exhibit B.

Notwithstanding those objections, Plaintiffs persist in maintaining that the NFLPA comply with the subpoena.

### Meet and Confer Certification

Before commencing this action, counsel for the NFLPA served written objections to the Plaintiffs subpoena on September 29, 2008. Thereafter, counsel for the NFLPA spoke and corresponded in good faith with Plaintiffs' attorney William Meyer on October 1, 2008, October 3, 2008, and October 7, 2008, urging that the instant subpoena be withdrawn to be re-issued in a sharply restricted form only if the District Court in Baltimore permitted discovery beyond the administrative record. Copies of the correspondence between counsel are attached as Exhibits C, D and E. Mr. Meyer has declined to withdraw the subpoena and insisted that the NFLPA waive its rights under Rule 45(c) to challenge the subpoena in this Court and, instead, agree to submit the NFLPA's objections to the federal court in Baltimore. NFLPA counsel declined that proposal.

**WHEREFORE**, non-party National Football League Players Association respectfully requests that the subpoena issued by Plaintiffs out of this Court be quashed and that the costs and attorney's fees be awarded to it.

DATED:  October 8, 2008

Respectfully submitted,

JOSEPH A. YABLONSKI
chip@yablonskilaw.com
D.C. Bar No. 91777
**Joseph A. Yablonski, P.L.L.C.**
1776 K Street, N.W.
Suite 840
Washington, D.C.  20006
Phone:  (202) 833-9062
Fax:     (202) 463-6688

# CERTIFICATE OF SERVICE

Undersigned certifies that a copy of the National Football League Players Association's Non-Party Motion to Quash, Memorandum in Support and proposed order was served by email and Federal Express this 8th day of October, 2008 on:

Cyril V. Smith, Esq.
William K. Meyer, Esq.
**Zuckerman Spaeder, LLP**
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031

Hisham M. Amin, Esq.
**Groom Law Group, Chartered**
1701 Pennsylvania Avenue, N.W.
Suite 1200
Washington, D.C. 20006

Nathan J. Oleson, Esq.
**Akin Gump Strauss Hauer Feld LLP**
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564

_____
Joseph A. Yablonski

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| NATIONAL FOOTBALL LEAGUE) | |
| PLAYERS ASSOCIATION, ) | |
| ) | |
| Movant, ) | |
| ) | Misc. Action No. _____ |
| vs. ) | (D.MD., Case No. 08-cv-01870 WMN) |
| ) | |
| PIO SAGAPOLUTELE, SEAN ) | |
| LAMAR SMITH, AND BRUCE ) | |
| SCHWAGER, ) | |
| ) | |
| Respondents. ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION'S MOTION TO QUASH

Movant, the National Football League Players Association ("NFLPA") submits this Memorandum in support of its Motion to Quash a subpoena *ad testificandum* and *duces tecum* served upon it.

## BACKGROUND

This case, which is now pending in federal court in Baltimore, challenges three separate benefit determinations made by the Retirement Board of the Bert Bell/Pete Rozelle Retirement Plan: (1) that Plaintiff Pio Sagapolutele's disability award should have begun at an earlier date; (2) that the disability award by the Retirement Board to Sean Lamar Smith should have begun earlier; and (3) that Bruce Schwager should have

received pension-credit for professional football seasons he claims to be entitled during the 1950's.

Plaintiffs acknowledge that their benefits decisions were made for the Plan(s) by its Retirement Board:

> 7.     The Plan is an employee pension benefit plan within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A), created for the benefit of the employees of the National Football League's member teams. The Plan has historically had a multi-person Retirement Board which meets quarterly (typically, in January, April, July and October) for the purpose of deciding benefit claims. Half of the Board's six members are appointed by Gene Upshaw, the Executive Director of the National Football League Players Association (the "NFLPA"), the player's union. The other half are chosen by team owners.
>
> *     *     *
>
> 15.     [A]n essential part of the Retirement Board's job is to determine when a player became totally and permanently disabled, in addition to the level of disability. This is sometimes known as the "effective date" of the benefits. Because the effective date can determine not only how far back the benefits will go, but also whether the claimant will qualify for Active Football benefits (as opposed to a lesser benefit), it is critical that this date be determined fairly.

Complaint (Dkt #1) at pp. 3, 6.

The Plans were established pursuant to Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186, which requires equal representation on the bodies governing such plan – one-half of the representatives being designated by Management and one-half by the Union. Final decisions of the Retirement Board are reviewable in federal court under a deferential standard, referred to in this judicial district as an "abuse-of-discretion" or "arbitrary-and-

2

capricious" standard. The courts have been unanimous in holding that the Plan's

Retirement Board has broad discretionary powers and that its benefit determinations must

be reviewed with deference under the abuse of discretion standard. *See, e.g., Meiburger*

*v. Bert Bell/Pete Rozelle NFL Player Ret. Plan (In re Marshall)*, 261 F.App'x 522, 525

(4th Cir. 2008) (unpublished per curiam); *Boyd v. Bert Bell/Pete Rozelle NFL Player Ret.*

*Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005); *Courson v. Bert Bell/Pete Rozelle NFL Player*

*Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000).

To avoid the restrictive standard that has been applied by every Court of Appeals

in reviewing decisions of this Retirement Board, Plaintiffs have filed a prolix Complaint

which pillories the deceased Executive Director of the National Football League Players

Association as biased against the interests of former NFL players despite the fact that he

played in the NFL for sixteen years and had collectively bargained for more than a billion

dollars in benefits for current and former players over the past decade and one-half.[1]

---

[1] In its April 8, 2008 Report for Congress entitled "Former NFL Players: Disabilities, Benefits, and Related Issues," the Congressional Research Service chronicled these changes:

> 1993. The NFL and the players association signed a seven-year CBA, "which guarantee[d] more than **$1 billion in pension, health, and post-career benefits** for current and retired players...." Specifically, the agreement provided for free agency; gave players a guaranteed percentage of the gross revenues; **retroactively increased** pre-59ers' **pensions by 30%** and all **other players' pensions by 40%**; added pre-59ers to the Bert Bell Pension Plan (which **added 906 players to the plan**); **decreased** the **vesting** requirement **to three credited seasons**; and the agreement established the **Retiree Medical benefit, Second Career Savings Plan**, and **Total and Permanent (T&P) Disability benefits**. Additionally, "**WWII years**" were included for pension eligibility, increasing

Notably, Plaintiffs do not claim that any member of the Retirement Board is biased; indeed, they do not identify any member of the Retirement Board in their Complaint. Plaintiffs compound their irrelevant assault on the NFLPA by misleading references to Congressional Hearings and hearsay quotations from newspapers on-line publications.

They have followed up those irrelevant allegations with an extraordinarily broad Rule 30(b)(6) Deposition Notice containing eighteen (18) different depositions topics and a subpoena *duces tecum* seeking seventeen (17) categories of documents. **None** of the

---

[the number of] credited seasons **for 159 players**," and "**Korean War and Vietnam** years were included for pension credits, **adding 182 players**."

1998. The 1993 CBA was extended through at least 2003. The extension established an annuity plan; provided for salary guarantees for certain players; increased minimum salaries, **increased** the **lowest benefit credit from $80 to $100**; **increased the T&P** disability benefit; and changed the pension eligibility requirement from five to four credited seasons.

2002. The CBA was extended again. The extension allowed injured reserve seasons prior to 1970 to be counted toward pension eligibility and **raised** the **lowest** benefit credits **from $100 to $200**.

2006. The CBA was extended and became effective until the last day of the 2012 league year. The extension **raised** the lowest **benefit credit from $200 to $250** (for individuals who played during the period 1920-1982); **tripled widows' and surviving children's benefits**; created the Plan 88 program; and **increased** the **monthly pension amount by 10%** for individuals who played from 1983-2006.

2007. The following benefits and programs were announced or established: Health Reimbursement Account Plan, Cardiovascular Health Program, NFL Player Joint Replacement Benefit Plan, and assisted living arrangements.

CRS Code RL-34439 at 22-24 (footnotes omitted)(emphasis supplied).

requested documents and **none** of the Rule 30(b)(6) topics mentions or refers to **any** of the Plaintiffs in this case.

As shown herein, the non-party discovery that is sought by Plaintiffs is not permissible under the ERISA decisions of this Court or the Fourth Circuit. Notably, Plaintiffs sought this discovery from the NFLPA without first obtaining any discovery from the Plans themselves, which are the logical, original source for any truly relevant information.

Furthermore, apart from the cases that strictly limit or prohibit altogether discovery in ERISA cases, the documents requested and the scope of the Rule 30(b)(6) notice are wholly irrelevant – in the discovery sense of the word – and are properly objectionable on grounds of overbreadth, vagueness, calling for privileged communications, documents not subject to NFLPA's legal control, and imposing on it undue burden and expense.

As set forth in the Certification to the Motion, efforts by NFLPA counsel to have Plaintiffs withdraw the subpoena and to re-issue it to conform with rulings of the forum court have been unsuccessful.

## ARGUMENT

I.  **EXCEPT IN THE VERY RAREST OF INSTANCES – WHICH THIS CASE IS NOT – DISCOVERY IN ERISA BENEFITS CASES IS LIMITED TO THE SAME RECORD THAT WAS BEFORE THE PLAN FIDUCIARIES**

The Subpoena served on the NFLPA, which is returnable on October 13, 2008, should be quashed because it seeks information that will neither be admissible nor lead to admissible evidence. Although a participant or beneficiary of an employee benefit plan may file suit under ERISA Section 502(a)(1)(B) "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), the Supreme Court has held that federal courts must apply a deferential standard of review when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Plaintiffs essentially concede that the Bert Bell/Pete Rozelle Plan gives the Retirement Board broad discretionary authority to determine their eligibility for benefits.

The standard of review in this category of cases has been described by the Court of Appeals for this Circuit as "'arbitrary and capricious' and 'abuse of discretion' review – [which] is plainly deferential." *Wagener v. SBC Pension Benefit Plan-Non-Bargained Program*, 407 F.3d 395, 402 (D.C.Cir.2005) (citing *Firestone*, 489 U.S. at 111-15). Furthermore, in *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450 (D.C.Cir.1992), the Court of Appeals recognized that judicial review in abuse of discretion cases may only be based on the record available to the administrator or fiduciary at the time the decision was

made: "Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum." *Id.* at 1455.

This Court recognized in *Hunter v. Metropolitan Life Insurance Co.*, 2002 WL 32072472 (D.D.C. Aug.9, 2002), that, under the deferential standard of review, "the weight of authority clearly **limits the evidence to the facts before the claim administrator** or fiduciary at the time the benefits decision was made." *Id.* at *1 (emphasis supplied), citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir.1999). See also *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 493 (D.C.Cir.1998); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006) (en banc ) (in general, a district court may review **only** the administrative record when considering whether the plan administrator abused its discretion); *Hall v. Unum Life Ins. Co.*, 300 F.3d 1197, 1201 (10th Cir.2001) (the majority of circuits have held that, in reviewing a plan administrator's decision for abuse of discretion, courts may not consider evidence beyond the administrative record). There is, therefore, overwhelming precedent that discovery beyond the administrative record is not permitted in ERISA cases involving a deferential standard of review.

The rationale for this prohibition is described by the Seventh Circuit in the *Perlman* case in which UNUM made the benefit determination:

> [T]he district court erred in permitting discovery into UNUM's decision-making. There should not have been any inquiry into the thought processes

of UNUM's staff, the training of those who considered Perlman's claim, and in general who said what to whom within UNUM-all of which Perlman was allowed to explore at length by depositions and interrogatories, and on some of which the district judge relied. Deferential review of an administrative decision means review of the administrative record. We have allowed parties to take discovery and present new evidence in ERISA cases subject to de novo judicial decisions ..., but never where the question is whether a decision is supported by substantial evidence, or is arbitrary and capricious.

*Perlman*, 195 F.3d at 981-82. As explained by this Court in *Hunter*, when review is limited to the arbitrary and capricious standard, the court should not permit discovery beyond the administrative record. 2002 WL 32072472 at *2 (denying plaintiffs' motion to compel).

Fourth Circuit law, which controls cases pending in the District Court for the Northern District of Maryland where this action is pending is equally emphatic in restricting discovery: "when a district court reviews a plan administrator's decision under a deferential [standard] the district court is limited to the evidence that was before the plan administrator at the time of the decision." *Bernstein v. Capital Care, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995). See also, *Stup v. UNUM Life Ins. Co.*, 390 F.3d 301, 307 n. 3 (4th Cir.2004) (noting that "in reviewing UNUM's decision, a court cannot consider evidence that was not before UNUM when it made its determination").

The Fourth Circuit bars discovery beyond the administrative record when the court's review is for an abuse of discretion because limiting discovery and requiring a court to consider only the record that was before the plan administrator promotes the

ERISA objectives of promptly resolving claims and preventing courts from becoming

substitute plan administrators. *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d

1017, 1025 (4th Cir.1993). An unpublished recent decision of the Fourth Circuit,

*Donnell v. Metropolitan Life Ins. Co.*, 165 Fed.Appx. 288, 297 (4th Cir.2006), also states

that "even in ERISA actions in which courts review the administrator's decision de novo,

introduction of **evidence outside the administrative record is permitted only in**

**exceptional circumstances**. Where, as here, a court reviews an administrator's decision

under a deferential standard, **discovery** and introduction of extrinsic evidence pertaining

to the 'mental processes of the plan's administrator' are **generally, if not uniformly,**

**disallowed**." *Id.* at 297 (citations omitted) (emphasis supplied).

The District Court in Baltimore very recently held that, "[a] district court has

discretion to allow evidence that was not before the plan administrator **only** when a *de*

*novo* standard applies, and even then, **only** in exceptional circumstances, where such

'**additional evidence is necessary to conduct an adequate *de novo* review of the**

**benefit decision**.'" *Bartel v. Sun Life Assurance Co. of Canada,* 536 F.Supp.2d 623, 631

(D.Md. 2008) (emphasis supplied), quoting *Quesinberry v. Life Ins. Co. of North*

*America*, 987 F.2d 1017, 1025 (4th Cir.1993).[2] This case does not involve *de novo*

---

[2] Other decisions from within the Fourth Circuit are in full accord: *McCready v. Standard Ins. Co.*, 417
F.Supp.2d 684, 687 n. 2 (D.Md.2006) (reaffirming decision to deny motion to compel discovery,
because "[i]t is well established that review of an administrator's decision for reasonableness is based on

review and there are no "exceptional circumstances." To the contrary, there is no specific

claim that any member of the Plan's Retirement Board, which made the decisions that are

challenged, acted inappropriately or was biased. Indeed, the only claim of bias is that

Gene Upshaw, the Executive Director of one of the bargaining parties that appointed

three members of the Board was biased. Mr. Upshaw admittedly was not a member of

the Retirement Board that made the benefit decisions that are being challenged in this

case.

For these reasons, the non-party discovery sought by the Plaintiffs from the

NFLPA is not permissible and the subpoena should be quashed.

## II.   PLAINTIFFS' DOCUMENT REQUESTS ARE INDIVIDUALLY OBJECTIONABLE

---

the evidence before the administrator at the time of the determination"); *Stanley v. Metropolitan Life Ins. Co.*, 312 F.Supp.2d 786, 791 (E.D.Va.2004) ("the Fourth Circuit precludes discovery of non-record information, and therefore prohibits courts from probing into the recesses of the administrator's mind") (emphasis supplied); *Beckner v. American Benefit Corp.*, 2006 WL 2061131 at *2 (S.D.W.Va) ("Without showing some exceptional circumstance why Plaintiff believes this record may be incomplete, which he clearly has not done in this case, the Court will not put the parties to the additional delay and expense of discovery.") (emphasis supplied); *Sawyer v. Potash Corp. of Saskatchewan*, 417 F.Supp.2d 730, 738 (E.D.N.C.2006) ("[w]hen a court conducts a review of a claim administrator's decision for abuse of discretion, evidence is limited to the facts that were before the administrator when it made its decision. Additional discovery is not allowed – only the administrative record is admissible" (citations omitted)) (emphasis supplied); *Burkhart v. Metropolitan Life Ins. Co.*, 2003 WL 21655486, *2 (E.D.Va. June 11, 2003) ("Plaintiff cannot get additional discovery by alleging that the plan administrator operated under a conflict of interest. Where the administrator operated under a conflict of interest, the Court weighs that conflict as a factor in where there was an abuse of discretion" (citation omitted)) (emphasis supplied).

The NFLPA has served Plaintiffs with its objections to each separate document request and has set forth a number of "general objections" to those requests which are set forth in the margin and which it incorporates herein by reference.[3] Under Rule 26 of the Federal Rules of Civil Procedure, limits should be imposed by the court when

---

[3] The "general objections" are:

1. The NFLPA objects to providing any material in response to the subpoena because such information will neither be admissible nor will it lead to admissible evidence in this case. This case is a benefits claim under ERISA in which the Retirement Board of the Plan has full discretion to determine benefits. The Fourth Circuit has held that evidence outside the administrative record cannot be considered by a reviewing court in such a case.

2. The NFLPA objects because the "Documents to Be Produced" are not described with reasonable particularity. The requests are compound and confusing and seek multiple types of information from multiple sources, several of which are beyond the control of the NFLPA.

3. The NFLPA objects because the requests make no distinction between documents in the custody of individuals employed by the NFLPA documents in the custody of individuals designated by the NFLPA who are fiduciaries of the Plans and documents that individuals employed by the NFLPA have in their custody as agents of the NFLPA. The NFLPA will produce only those documents over which it has legal control.

4. The NFLPA objects because it would impose an extraordinary burden on the NFLPA to locate and produce the seventeen broad and vague categories of documents sought by plaintiffs. The electronically stored information sought by these requests is not reasonably accessible and cannot be produced without undue burden or cost. The burden and expense of the proposed discovery outweighs any marginal benefit it could have on this case, and the information sought will have no bearing on the Court's determination as to whether the determinations by the Retirement Board in the cases of Messrs. Sagapolutele, Smith and Schwager were arbitrary, capricious, or an abuse of discretion.

5. The NFLPA objects to the requests because they seek, without limitation, information which is covered by the attorney-client privilege, the work-product doctrine, and the common-interest privilege.

6. The NFLPA objects on the grounds that the materials sought, if they are discoverable, can be obtained more conveniently, less expensively and with less burden from the defendants.

7. The NFLPA objects because Plaintiffs' requests have no bearing upon the claims asserted in this case. The names of the Messrs. Sagapolutele, Smith and Schwager do not appear on Attachment B in any of the 17 categories of NFLPA documents that Plaintiffs have requested. The requests are plainly designed to annoy, embarrass, and oppress the NFLPA, which is not a party to this case and did not make the decisions concerning benefits at issue in this case. Instead of taking reasonable steps to avoid imposing undue burden upon the NFLPA, the subpoena is written in the broadest and vaguest terms that would require the NFLPA to incur great burdens and expense to comply, for which it will seek sanctions under Rule 45(c)(1), Fed.R.Civ.P.

> (i) the **discovery** sought is unreasonably cumulative or duplicative, or **is obtainable from some other source that is more convenient, less burdensome, or less expensive**; (ii) the party seeking discovery has had **ample opportunity** by discovery in the action **to obtain the information sought**; or (iii) the **burden or expense** of the proposed discovery **outweighs** its **likely benefit**, taking into account the **needs of the case**, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the **importance** of the proposed discovery **in resolving the issues**.

FED.R.CIV.P. 26(b)(2) (emphasis supplied.) Here, discovery from the Plans concerning these benefit determinations has not yet been obtained and plainly is "more convenient, less burdensome" and "less expensive" than discovery involving a non-party.

Furthermore, the information sought from the NFLPA is of no "importance" in resolving "the issues" presented by this case.

This case is the mirror image of *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449 (D.D.C. 2002), where the plaintiff sought extensive discovery from non-parties

---

8.     The NFLPA objects to the extent the instructions and definitions set forth in the subpoena and attachments are inconsistent with the limitations imposed by the Federal Rules of Civil Procedure, Local Rules of the U.S. District Court for the District of Columbia, and any applicable Local Rules of the U.S. District Court for the District of Maryland.
9.     The NFLPA objects on the ground that the date and place of the deposition and production of documents were unilaterally determined by Plaintiffs.
10.    The NFLPA objects on the ground that, based on the procedural posture and standard of review at issue in this matter, Plaintiffs are not entitled to proceed with discovery and depositions merely because they have served such discovery. Fourth Circuit precedent requires Plaintiffs to obtain an affirmative ruling permitting such discovery.
11.    The NFLPA objects on the ground that it does not fund or administer the Plan, and the Plan document provides the relevant information concerning Plan funding and administration.
12.    The NFLPA incorporates its general objections into each specific objection set forth below.
Motion, Exhibit B at 1-3.

without demonstrating that it had attempted and failed to obtain discovery from the

defendants. Judge Urbina declared that

> …the information sought from the non-party witnesses is irrelevant to the plaintiff's… claim and thus does not go to the heart of the lawsuit. Id.; FED. R. CIV. P. 26(b)(2). In addition, the plaintiff can obtain the information needed to proceed on its [ ] claim from the federal defendants and **it has not shown that it has made reasonable attempts to obtain the information elsewhere before asking for this extraordinarily broad discovery request of the non-party witnesses**. Id.

*Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 455 (D.D.C. 2002) (emphasis

supplied).

The party seeking "to compel production of the documents bears the initial burden

of explaining how the requested information is relevant." *Jewish War Veterans v. Gates*,

506 F.Supp.2d 30, 50 (D.D.C. 2007), citing *Bethea v. Comcast*, 218 F.R.D. 328, 329

(D.D.C. 2003). Courts must also balance the need for discovery against the burden

imposed on the person ordered to produce documents. *Katz v. Batavia Marine &*

*Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir.1993). Non-party status is one of the

factors the court uses in weighing the burden of imposing discovery. *Id*. An undue

burden is identified by looking at factors such as relevance, the need for the documents,

the breadth of the document request, the time period covered by such request, the

particularity with which the documents are described, and the burden imposed. *Flatow v.*

*Islamic Republic of Iran*, 196 F.R.D. 203, 206-07 (D.D.C.2000).

On examination, each of Plaintiffs' requests plainly fails to comply with these well-established standards, as we now show:

1. **Document Request No. 1**: All documents which relate to the impact of claims assessments and benefit determinations under the Plan on employer contributions, Projected Benefits, the Salary Cap, Total Revenue, and Guaranteed League-wide Salary.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 1, and it also objects to this Paragraph because it is overbroad and vague and is not limited to the claims asserted by Plaintiffs Sagapolutele, Smith and Schwager. The documents sought have no bearing on the claims asserted in this action. The NFLPA objects because the request is unlimited in temporal scope. The NFLPA objects on the ground that the terms "impact" and "assessments" are vague, ambiguous, and overly broad.

**Additional legal support for NFLPA's Objections to Request No. 1**:

In addition to the self-explanatory objections quoted above, Plaintiffs' request presumes that parties in collective bargaining concerning the benefits to be offered by Plans established pursuant to Section 302 of the Taft-Hartley Act cannot take into account the likely costs of providing such benefits. This issue was settled long ago by the Supreme Court in *United Mine Workers Health and Retirement Funds v. Robinson*, 455 U.S. 562 (1982):

Section 302(c)(5) plainly does not impose the Court of Appeals' reasonableness requirement, and respondents do not offer any alternative federal law to sustain the court's holding. **There is no general requirement that the complex schedule of the various employee benefits must withstand judicial review under an undefined standard of reasonableness**. This is no less true when the potential beneficiaries subject to discriminatory treatment are not members of the bargaining unit; we

previously have recognized that former members and their families may suffer from discrimination in collective-bargaining agreements because the union need not "affirmatively ... represent [them] or ... take into account their interests in making bona fide economic decisions in behalf of those whom it does represent." *Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181, n. 20. Moreover, **because finite contributions must be allocated among potential beneficiaries, inevitably financial and actuarial considerations sometimes will provide the only justification for an eligibility condition that discriminates between different classes of potential applicants for benefits**. As long as such conditions do not violate federal law or policy, they are entitled to the same respect as any other provision in a collective-bargaining agreement.

*Id.* at 574-75 (emphasis supplied). The entire premise of this Request and the other requests is legally incorrect. This request is also overbroad because it contains no temporal limits. *Howard v. Rustin*, 2008 WL 2008937 at *3 (W.D.Pa.) ("...the Court finds that the lack of temporal limitations renders said request overbroad and unduly burdensome."); *Sabatier v. Barnes*, 2001 WL 175234 (E.D.La.).

2. **Document Request No. 2**: All documents which memorialize or relate to communications by, from, between or among the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw since January 1, 2000 regarding the impact of claims assessments and benefit determinations under the Plan on employer contributions, Projected Benefits, the Salary Cap, Total Revenue, and Guaranteed League-wide Salary.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 2 and it also objects to this Paragraph because it is overbroad and vague and is not limited to the claims asserted by Plaintiffs Sagapolutele, Smith and Schwager. The documents sought have no bearing on the claims asserted in this action. The NFLPA objects on the ground that the terms "impact" and "assessments" are vague, ambiguous, and overly broad.

**Additional legal support for NFLPA's Objections to Request No. 2**: *See* Additional

legal support for NFLPA's Objections to Request No. 1.

3. **Document Request No. 3**: All documents relating to selection by the NFLMC, the NFLPA, or Gene Upshaw of representatives on the Retirement Board or the DICC, including the criteria for their selection, their qualifications, and their prior experience in the fields of pension benefits, medicine, disabilities, employment law, or disability claims assessments and benefit determinations.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 3 and it also objects to this Paragraph because it is overly broad and unduly burdensome and has no temporal limitations. Any documents relating to the selection or qualifications of any representatives designated by the NFLMC or the NFLPA to sit on the Retirement Board are totally irrelevant to the claims of Plaintiffs Sagapolutele, Smith and Schwager and will neither be admissible in evidence nor lead to admissible evidence in this case. The NFLPA further objects because the Plan does not contain any specific qualifications or limitations on the persons who are selected to serve on the Retirement Board.

**Additional legal support for NFLPA's Objections to Request No. 3**: In addition to

the NFLPA's self-explanatory objections, NFLPA also observes that the premise for this

request is flawed. ERISA explicitly permits an individual to serve "as a fiduciary" who is

also "an officer, employee, agent, or other representative of a party in interest." 29 U.S.C.

§ 1108(c)(3). The Fourth Circuit, in a decision involving this Plan "rejected the idea that

fiduciaries under ERISA cannot be impartial simply because they have ties to

contributors to the plan." *Bidwell v. Garvey*, 943 F.2d 498, 508 (4th Cir.1991). This

request is also overbroad because it contains no temporal limitations. *Howard v. Rustin*,

2008 WL 2008937 at *3 (W.D.Pa.) ("...the Court finds that the lack of temporal

limitations renders said request overbroad and unduly burdensome."); *Sabatier v. Barnes*,

2001 WL 175234 (E.D.La.).

4.  **Document Request No. 4**: All documents which constitute, memorialize, or
    relate to reports or other communications since January 1, 2000 by
    Retirement Board representatives appointed by the NFLMC to the NFLMC,
    the League, or any Club.

    **Objections**: The NFLPA incorporates herein its General Objections to the
    categories of documents requested in Paragraph 4. Subject to and without waiving
    its objections, on information and belief, the NFLPA has no documents responsive
    to this request involving communications between NFLMC's chosen
    representatives on the Retirement Board and the NFLMC, the League or the Clubs.

**Additional legal support for NFLPA's Objections to Request No. 4**: This Request is

obviously directed to the NFL Management Council ("NFLMC") and was mistakenly

included in the subpoena served on the NFLPA.

5.  **Document Request No. 5**: All documents related to actual or potential
    conflicts of interest by the Plan, the Retirement Board, the DICC, the
    League, any Club, the NFLMC, the NFLPA, or Gene Upshaw in the funding
    or administration of the Plan, the selection of Retirement Board or DICC
    representatives, disability claims assessments, benefit determinations, or
    other decision-making by the Retirement Board and the DICC.

    **Objections**: The NFLPA incorporates herein its General Objections to the
    categories of documents requested in Paragraph 5. The request is also overbroad, having
    no temporal limitations. The compound nature of this request obscures and fails to
    describe with reasonable particularity the documents that are being sought. The NFLPA
    objects to the extent that the request seeks documents over which it has no control. It

also objects to this request because it seeks documents that are protected from disclosure by the attorney-client privilege, work-product doctrine, or common-interest privilege. The NFLPA further objects on the ground that the phrase "actual or potential conflicts of interest" is overly broad, vague, and ambiguous.

**Additional legal support for NFLPA's Objections to Request No. 5**: The Request is overbroad, seeking essentially 18 categories of information. It also is objectionable because it contains no temporal limitations. As described above, ERISA permits the bargaining parties to designate persons to serve as plan fiduciaries who are officers, employees agents and representatives of a party-in-interest with respect to a Plan, and such ties do not constitute a conflict of interest. *Bidwell v. Garvey*, *supra*. Additionally, the NFLPA notes that "[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that... the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare and serve a privilege log as soon as practicable.

6. **Document Request No. 6**: All documents related to actual or potential bias on the part of the Plan, the Retirement Board, the DICC, the NFLPA or Gene Upshaw against retired NFL players.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 6. The request is also overbroad, having no temporal limitations. The compound nature of this request obscures and fails to describe with reasonable particularity the documents that are being sought. The NFLPA objects on the ground that the phrase "actual or potential bias" is overly broad, vague, and ambiguous.

**Additional legal support for NFLPA's Objections to Request No. 6**: *See* the

additional legal support cited in connection with the preceding Request.

> 7.   **Document Request No. 7**: All documents which discuss or address the
> motives of the Plan, the Retirement Board, the DICC, the NFLPA or Gene
> Upshaw regarding disability claims assessments, benefit determinations, or
> other decision-making under the Plan.

**Objections**: The NFLPA incorporates herein its General Objections to the
categories of documents requested in Paragraph 7. The request is also overbroad, having
no temporal limitations. The compound nature of this request obscures and fails to
describe with reasonable particularity the documents that are being sought. The NFLPA
objects to the extent that the request seeks documents protected from disclosure by the
attorney-client privilege, work-product doctrine, or common-interest privilege. To the
extent the request seeks documents within the administrative records of Plaintiffs' claims,
such documents can be obtained more conveniently, less expensively, and with less
burden from the defendants.

**Additional legal support for NFLPA's Objections to Request No. 7**: The NFLPA

incorporates its objections. The "thought processes" of the Retirement Board and Plan

staff are not proper discovery even when the requests involve the benefit determinations

that are under challenge. *See Perlman v. Swiss Bank Corp.*, 195 F.3d at 981-82. The

thought process of persons other than plan fiduciaries is wholly irrelevant. This request

is also overbroad because it has no temporal limitations. *Howard v. Rustin*, 2008 WL

2008937 at *3 (W.D.Pa.) ("...the Court finds that the lack of temporal limitations renders

said request overbroad and unduly burdensome."); *Sabatier v. Barnes*, 2001 WL 175234

(E.D.La.). Additionally, the NFLPA notes that "[c]ommon sense and the purpose of

[Rule 45(d)(2)] dictate that… the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare and serve a privilege log as soon as practicable.

8. **Document Request No. 8**: All documents relating to efforts by the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw to assure fair or accurate benefit claims decisions under the Plan.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 8. The request is also overbroad, having no temporal limitations. The compound nature of this request obscures and fails to describe with reasonable particularity the documents that are being sought. The NFLPA objects to the extent that the request seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or common-interest privilege. The NFLPA objects on the ground that it neither administers nor determines eligibility for benefits under the Plans, and further objects on the ground that the Plan document provides the procedure by which benefit claims are to be determined. To the extent the request seeks documents within the administrative records of Plaintiffs' claims, such documents can be obtained more conveniently, less expensively, and with less burden from the defendants.

**Additional legal support for NFLPA's Objections to Request No. 8**: *See* additional legal support cited with regard to the preceding Request. Additionally, the NFLPA notes that "[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that… the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare and serve a privilege log as soon as practicable.

9. **Document Request No. 9**: All documents related to or constituting changes made to the Plan Document since the Webster decision.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 9 and it makes the following specific objections to this Paragraph: it is overbroad and vague and is not limited to the claims asserted by Plaintiffs Sagapolutele, Smith and Schwager. The documents sought have no bearing on the claims asserted in this action. The NFLPA objects to the extent that the request seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or common-interest privilege.

**Additional legal support for NFLPA's Objections to Request No. 9**: In addition to the NFLPA's objections, the Plans are the most convenient, least expensive, source of this information **if** it is discoverable. Additionally, the NFLPA notes that "[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that… the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare and serve a privilege log as soon as practicable.

10. **Document Request No. 10**: All documents related to or constituting proposed changes made to the Plan Document since the Webster decision.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 10 and it makes the following specific objections to that Paragraph: This paragraph is overbroad and vague and is not limited to the claims asserted by Plaintiffs Sagapolutele, Smith and Schwager, and the documents sought have no bearing on the claims asserted in this action. The NFLPA objects to the extent that the request seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or common-interest privilege.

**Additional legal support for NFLPA's Objections to Request No. 10**:   In addition to the NFLPA's objections, the Plans are the most convenient, least expensive, source of this information **if** it is discoverable.  Additionally, the NFLPA notes that "[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that… the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996).  The NFLPA will prepare and serve a privilege log as soon as practicable.

11.   **Document Request No. 11**:  All documents related to or constituting communications by, to, between or among the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw since January 1, 2005 regarding the Webster decision or the Webster appeal.

**Objections**:  The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 11 and it makes the following specific objections to that Paragraph:  Apart from the fact that counsel for the Plaintiffs in this case was counsel in the *Webster* case, there is no nexus between that decision and appeal and the claims asserted in this case.  To the extent the settlors of these trusts had communications concerning the *Webster* decision and the *Webster* appeal, such communications are privileged under the common-interest privilege, the work product doctrine and/or the attorney-client privilege.

**Additional legal support for NFLPA's Objections to Request No. 11**:   In addition to the NFLPA's objections, the Plans are the most convenient, least expensive, source of this information **if** it is discoverable.  Additionally, the NFLPA notes that "[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that… the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite*

*v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare and serve a privilege log as soon as practicable.

12. **Document Request No. 12**: All documents which memorialize or relate to communications by, to, between, or among the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw since January 1, 2005 regarding efforts and advocacy by, and publicity about, retired players, associations of retired players, and their representatives who have attempted to influence or reform the Plan, the Retirement Board, or the Retirement Board's status, membership, administration, operation, benefit determinations, or decision-making process.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 12 and it makes the following specific objections to that Paragraph: Communications "by, to, between or among" various entities and individuals concerning "efforts," "advocacy" and "publicity" about retired players who have attempted to influence or reform the Plan have nothing whatsoever to do with the claims asserted by Plaintiffs Sagapolutele, Smith and Schwager in this case. The NFLPA objects to the extent that the request seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or common-interest privilege. The NFLPA further objects on the ground that the request and the terms therein are overly broad.

**Additional legal support for NFLPA's Objections to Request No. 12**: *See* the NFLPA's Objections, which are self-explanatory. Additionally, the NFLPA notes that "[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that... the full description "of the basis for each claim of privilege need not be made at the time the objections are served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare and serve a privilege log as soon as practicable.

13. **Document Request No. 13**: All documents which memorialize or relate to communications by, to, between, or among the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw since January 1, 2005 regarding legislative hearings or proposed legislation concerning the Retirement Board, its status, membership, administration, operation, benefit determinations, or decision-making process.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 13 and it makes the following specific objections to that Paragraph: Communications concerning legislative hearings or legislation are protected by the attorney-client and common-interest privileges as well as the First Amendment associational privilege. The NFLPA further objects on the ground that the request and the terms therein are overly broad.

**Additional legal support for NFLPA's Objections to Request No. 13**: *See* the

NFLPA's Objections, which are self-explanatory. Additionally, the NFLPA notes that

"[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that... the full description

"of the basis for each claim of privilege need not be made at the time the objections are

served." *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare

and serve a privilege log as soon as practicable.

14. **Document Request No. 14**: All documents which relate to efforts by the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw since January 1, 2005 to provide information to the media or public, or to influence public opinion or media perception of (a) the Plan, the Retirement Board and its decisions, or (b) Gene Upshaw's leadership of the NFLPA, with respect to the Plan or Retirement Board, including without limitation all correspondence, emails, reports, surveys, polls, studies, plans, or other material prepared by, for, or at the behest of any person engaged in public relations on behalf of the Plan, the Retirement

Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 14 and it makes the following specific objections to that Paragraph: Any documents relating to the provision of "information to the media or public" or "to influence public opinion or media perception regarding the Plan" or its decisions would neither be admissible nor lead to admissible evidence. The NFLPA objects to the extent that the request seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or common-interest privilege. The NFLPA further objects on the ground that the request and the terms therein are overly broad.

**Additional legal support for NFLPA's Objections to Request No. 14**: _See_ the

NFLPA's Objections, which are self-explanatory. Additionally, the NFLPA notes that

"[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that… the full description

"of the basis for each claim of privilege need not be made at the time the objections are

served." _Tuite v. Henry_, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare

and serve a privilege log as soon as practicable.

15. **Document Request No. 15**: All documents which relate to efforts by the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw since January 1, 2005 to provide information to any public official, or to lobby public officials regarding (a) the Plan, (b) the Retirement Board and its decisions, or (c) Gene Upshaw's leadership of the NFLPA, with respect to the Plan or the Retirement Board.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 15 and it makes the following specific objections to that Paragraph: Documents concerning lobbying and legislative activities of the NFLPA are protected by either the attorney-client, common-interest, or First

Amendment associational privileges. The NFLPA further objects on the ground that the request and the terms therein are overly broad.

**Additional legal support for NFLPA's Objections to Request No. 15**: _See_ the

NFLPA's Objections, which are self-explanatory. Additionally, the NFLPA notes that

"[c]ommon sense and the purpose of [Rule 45(d)(2)] dictate that... the full description

"of the basis for each claim of privilege need not be made at the time the objections are

served." _Tuite v. Henry_, 98 F.3d 1411, 1416 (D.C.Cir. 1996). The NFLPA will prepare

and serve a privilege log as soon as practicable.

16.    **Document Request No. 16**: All documents which comprise, memorialize, or relate to studies, research, or analyses reviewed by, or undertaken by or at the behest of, the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw which compared benefits available under the Plan with benefits available under retirement or benefit plans applicable to players of any other professional sport, including major league baseball, professional basketball, or professional ice hockey.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 16 and it makes the following specific objections to that Paragraph: Any documents comparing benefits made available to athletes in other professional leagues is irrelevant to the claims asserted in this case by Plaintiffs Sagapolutele, Smith and Schwager and would neither be admissible nor lead to admissible evidence as to whether the Retirement Board's determinations concerning Messrs. Sagapolutele, Smith and Schwager were arbitrary, capricious, or an abuse of discretion. The NFLPA further objects because the request is unlimited in temporal scope.

**Additional legal support for NFLPA's Objections to Request No. 16**: _See_ the

NFLPA's Objections, which are self-explanatory.

17. **Document Request No. 17**: All documents which comprise, memorialize, or relate to studies, research, or analyses reviewed by, or undertaken by or at the behest of, the Plan, the Retirement Board, the DICC, the League, any Club, the NFLMC, the NFLPA, or Gene Upshaw which analyzed the impact of different standards of eligibility or different disability criteria on potential benefits under the Plan.

**Objections**: The NFLPA incorporates herein its General Objections to the categories of documents requested in Paragraph 17 and it makes the following specific objections to that Paragraph: Any documents concerning the impact of different standards of eligibility or different disability criteria on potential benefits under the Plan are irrelevant to the claims asserted in this case and would be neither admissible nor lead to admissible evidence as to whether the Retirement Board's determinations concerning Messrs. Sagapolutele, Smith and Schwager were arbitrary, capricious, or an abuse of discretion. The NFLPA further objects because the request is unlimited in temporal scope.

**Additional legal support for NFLPA's Objections to Request No. 17**: *See* the

NFLPA's Objections, which are self-explanatory.


### III. THE RULE 30(b)(6) TOPICS ARE ALSO IRRELEVANT AND OVERBROAD AND WILL REQUIRE NEEDLESS EXPENSE WHEN THE RELEVANT INFORMATION IS READILY OBTAINABLE FROM THE DEFENDANTS.

In *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C.), *aff'd*, 166 F.R.D. 367

(M.D.N.C.1996), the court described the unique aspects of a Rule 30(b)(6) deposition and

the burden on the entity required to produce witnesses in response to such a deposition

notice:

> The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. ...
> Obviously it is not literally possible to take the deposition of a corporation;

instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation. The corporation appears vicariously through its designee. If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, **the corporation is obligated to prepare the designees** so that they may give knowledgeable and binding answers for the corporation. **Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved**.

166 F.R.D. at 361 (emphasis supplied).

The NFLPA should not be burdened with de-briefing its staff concerning the 18 topics of information that Plaintiffs state they intend to cover pursuant to this deposition notice and to prepare any number of witnesses from as many as six different departments to testify. In *Krasney v. Nationwide Mutual Ins. Co.*, 2007 WL 4365677 (D.Conn.), the Court quashed the notice of deposition for the very reasons cited by the NFLPA, plaintiffs' failure to "describe with reasonable particularity," the topics to be covered, as required by Rule 30(b)(6). *Id.* at *3, citing *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D.Kan.1996). The same conclusion was reached in *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9-10 (N.D.Ill. Jan. 24, 2000), regarding a Rule 30(b)(6) Notice, which the Court found "overbroad, unduly burdensome, and an inefficient means through which to obtain otherwise discoverable information."

Many of the topics in this deposition notice are open-ended (with no temporal limitations), others involve matters about which only Mr. Upshaw (who is now deceased) could testify, while still others involve issues of law concerning the *Webster* case, in which Plaintiffs' counsel participated. The common denominator of the eighteen topics is that they are all irrelevant to Plaintiffs' claims. As noted herein, none of the topics even mention the plaintiffs or the processing of their applications for benefits. The NFLPA should not be put to the expense of identifying and preparing a number of witnesses to testify on subjects that are "irrelevant to the issues of the lawsuit." *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D.Okla. 2003).

## CONCLUSION

For all of the foregoing reasons, this Court should quash the subpoena and award to the NFLPA the costs and expenses of filing this Motion.

DATED:  October 8, 2008

Respectfully submitted,

JOSEPH A. YABLONSKI
chip@yablonskilaw.com
(D.C. Bar No. 91777)
**Joseph A. Yablonski, P.L.L.C.**
1776 K Street, N.W.
Suite 840
Washington, D.C.  20006
Phone:  (202) 833-9062
Fax:     (202) 463-6688